Joshua Jordan, PRO SE
3223 Twin Church Rd.
Timmonsville, SC 29161
joshlegalstuff@gmail.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA (FLORENCE DIVISION)

| | |
|---|---|
| JOSHUA JORDAN, individually and as assignee of Prehired, LLC, Plaintiff, <br><br> v. <br><br> JEFFREY BERNSTEIN, individually, STRATEGIC EDUCATION LOAN FUND, LLC, and ISA PLUS, LLC, Defendants. | Case No.: <br><br> **COMPLAINT** |

Plaintiff Joshua K. Jordan ("Jordan"), proceeding pro se, individually and as assignee of Prehired, LLC ("Prehired"), hereby files this Complaint against Defendants ISA Plus, LLC ("ISAP"), Strategic Education Loan Fund, LLC ("SELF") (together, these two entities are referred to as the "Bernstein LLCs"), and Jeffrey Bernstein ("Bernstein") and alleges as follows:

### INTRODUCTION

1. This action arises from a complex series of contractual disputes, misrepresentations, and improper business practices perpetrated by the Defendants against Jordan and Prehired. Through unauthorized contract assignments, misrepresentations about contractual obligations, and abusive litigation tactics, the Defendants have caused significant damage to Jordan's business interests and reputation.

### PARTIES

2. Plaintiff Joshua K. Jordan is an individual residing in Charleston, South Carolina. Jordan is the former CEO of Prehired, LLC, and has been assigned all title, interest, and rights in claims related to ISAP, Bernstein, and SELF. See Exhibit A - Assignment Agreement.

3. Defendant ISA Plus, LLC is a Delaware limited liability company with its principal place of business in San Diego, California. ISAP was created by Bernstein specifically to conduct business with Prehired.

4. Defendant Strategic Education Loan Fund, LLC is a Delaware limited liability company with its principal place of business in San Diego, California.

5. Defendant Jeffrey Bernstein is an individual residing in San Diego, California. Upon information stated by Bernstein and ISAP in the Southern District of California Case No. 3:22-cv-01211-JAH-JLB, Bernstein is the managing member of both ISAP and SELF.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because there is complete diversity of citizenship between the Plaintiff and the Defendants, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. This Court has personal jurisdiction over the Defendants because they have conducted business in South Carolina, entered into contracts to be performed in whole or in part in South Carolina, and committed tortious acts causing injury to a South Carolina resident.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

9. The contracts at issue in this case contain a non-exclusive jurisdiction clause stating that New York law is to be used and designating courts in New York as a non-exclusive venue. This non-exclusive clause does not preclude this Court from exercising jurisdiction over this matter.

10. There is a related case currently pending in the United States District Court for the Southern District of California (Case No.: 3:22-cv-01211-JAH-JLB), in which ISAP has sued Jordan personally. Despite the New York non-exclusive jurisdiction clause in the relevant contracts, Jordan did not object to ISAP's choice of California as the forum for that action, demonstrating his flexibility and good faith regarding venue selection.

11. Jordan attempted to file a third-party complaint and counterclaim in the California action but was denied leave to do so. When Jordan requested that ISAP stipulate to allow the filing of these claims, ISAP refused. This refusal necessitated the filing of this separate action to address all related claims and parties.

12. Given the non-exclusive nature of the contractual forum selection clause, the pending related case in California, Jordan's demonstrated flexibility regarding venue, and the inability to bring all necessary parties and claims before the California court, this Court is the most appropriate forum for the resolution of all claims between the parties.

**FACTUAL ALLEGATIONS**

13. On January 7, 2020, Prehired entered into a Forward Purchase Agreement ("SELF-FPA") with SELF for the purchase and sale of Income Share Agreements ("ISAs"). See Exhibit B - SELF-FPA.

14. The SELF-FPA was signed by Jordan as CEO of Prehired, and Bernstein as the Founder and Managing Member of SELF.

15. After the first month of operating under the SELF-FPA, Jordan realized that the terms were unfavorable and unsustainable for Prehired's long-term operations. Specifically:

    a. The price per contract was only $10,000;

    b. On January 7, 2020, 25 ISAs were purchased for $250,000, in which only half, $125,000, was actually paid to Prehired;

    c. Payments were paid through a third party, Meratas, Inc., which retained half of each payment, resulting in Prehired receiving only $5,000 per contract and $125,000 total;

    d. The agreement included a mandatory repurchase clause for non-performing contracts.

16. Due to these unfavorable terms, Jordan was prepared to terminate the relationship.

17. In response, Bernstein entered into negotiations to revise the terms of their business relationship.

18. Bernstein, on behalf of ISAP (a newly created company owned by Bernstein), and Jordan, on behalf of Prehired, negotiated for new terms that would work for both parties.

19. The resulting changes are reflected in an unsigned Forward Purchase Agreement between Prehired and ISAP ("Operative FPA" or "ISAP-FPA"). See Exhibit C - Operative FPA. These changes included:

    a. A change in the contracting party from SELF to ISAP, a new company created by Bernstein specifically for purchasing ISAs from Prehired;

    b. An increase in the price per receivable from $10,000 to $12,500;

    c. A change in payment terms, eliminating the third-party intermediary Meratas, Inc., so payments would go directly to Prehired without Meratas taking any percentage of the payment;

    d. The removal of the mandatory repurchase clause for non-performing contracts, replacing it with a provision stating that Prehired "may" repurchase such contracts.

20. Although this new Operative FPA was never signed, both Prehired and ISAP operated under its terms for approximately two years. During this period from February 2020 through December 2021:

    a. ISAP purchased ~473 ISA contracts from Prehired at $12,500 per contract totaling $5,912,850.24;

    b. All purchased ISAs from Prehired at $12,500 per contract totaling $6,162,850.24

    c. Payments were made directly to Prehired without a third-party intermediary;

    d. Prehired voluntarily repurchased non-performing contracts, but was not contractually obligated to do so.

21. Combining the $250,000 amount of ISAs purchased by SELF under the SELF-FPA, and the $5,912,850.24 purchased under the Operative FPA (ISAP-FPA), the total purchased by the Bernstein LLCs is $6,162,850.24. <u>See</u> Exhibit D - ISA Purchase Totals.

22. During this period of February 2020 to December 2021, Prehired repurchased $1,777,944.20 in ISAs, making the net total payments. <u>See</u> Exhibit D - ISA Purchase Totals.

23. The relationship functioned well under these terms, with Prehired consistently placing more performing contracts than non-performing ones. **Prehired continued to repurchase non-performing contracts as long as ISAP continued to purchase new contracts**.

24. The dispute arose when ISAP indicated it would no longer purchase new contracts from Prehired. Although Prehired continued to repurchase non-performing contracts for a few more months in good faith, it eventually exercised its right to cease these repurchases upon realizing that ISAP and Bernstein had no intention of resuming contract purchases from Prehired.

25. Despite operating under the terms of the Operative FPA for nearly two years, ISAP, SELF, and Bernstein now wrongfully claim that the original SELF-FPA remains the operative agreement. This claim is baseless for several reasons:

    a. The SELF-FPA was between Prehired and SELF, not ISAP;

    b. SELF made no more purchases after January 7, 2020, when Bernstein's new company ISAP started making purchases in February 2020.

    c. The SELF-FPA explicitly required any assignment or amendment to be in writing and signed by all parties, which did not occur;

    d. The parties' course of conduct for two years clearly demonstrated their mutual agreement to the terms of the Operative FPA.

26. The attempt by Bernstein to unilaterally apply the terms of the SELF-FPA to the relationship between Prehired and ISAP constitutes improper self-dealing, given Bernstein's ownership and control of both SELF and ISAP.

27. ISAP has wrongfully claimed that Jordan and Prehired are obligated to repurchase non-performing contracts, despite this not being a mandatory term of the operative unsigned MSA.

28. ISAP's claims against Jordan are baseless and without merit, as there is no formal obligation to repurchase contracts under the operative agreement.

29. ISAP's actions have caused damage to Jordan's reputation and business interests.

30. ISAP has failed to produce any contract or document that establishes their standing against Jordan personally.

31. Bernstein's actions, including the creation of ISAP specifically to deal with Prehired, the attempt to unilaterally apply terms from the SELF-FPA to ISAP's relationship with Prehired, and the current lawsuit against Jordan, which has been ongoing for almost 2.5 years as it was filed on July 1, 2022, appear to be motivated by dissatisfaction with the business outcomes rather than any legitimate legal claim.

32. Jordan, as a first-time CEO of Prehired, also suffered significant financial losses due to regulatory actions against Prehired in the state of Washington, which were beyond his control.

33. Jordan has made multiple attempts to settle this dispute, all of which have been rejected by Bernstein and his companies. These rejections further demonstrate the Defendants' intent to harm Jordan rather than seek a fair resolution.

34. Jordan has diligently tracked his time spent on litigation involving Defendants. In 2022, he devoted approximately 100 hours; in 2023, he spent 199.5 hours; and as of the filing of this Complaint in 2024, he has spent an additional 24.5 hours, totaling 324 hours. In addition, after investing over $250,000 in legal fees, Jordan now has less than $1,500 to his name. The severe financial strain forced Jordan to study law and represent himself, highlighting the profound personal and financial impact caused by Defendants' baseless and prolonged litigation tactics.

## CAUSES OF ACTION

### COUNT I: DECLARATORY JUDGMENT (Against All Defendants)

35. Jordan repeats and realleges all preceding paragraphs as if fully set forth herein.

36. An actual controversy exists between Jordan and the Defendants regarding the terms of the operative agreement and Jordan's obligations thereunder.

37. Pursuant to 28 U.S.C. § 2201, Jordan seeks a declaratory judgment that:

    a. The ISAP-FPA (Operative FPA) is the operative agreement between the parties;

    b. Jordan and Prehired have no obligation to repurchase non-performing contracts under the operative agreement;

    c. The purported assignment from SELF to ISAP was invalid and unenforceable against Jordan.

    d. Additionally, if the Court finds that Prehired is liable for any repurchase obligations, Jordan respectfully requests a declaration that he is not personally liable for such obligations. At all relevant times, Jordan acted in his capacity as CEO of Prehired, LLC, a separate legal entity, and there is no basis to pierce the corporate veil. The Defendants have failed to provide any evidence that would justify holding Jordan personally responsible for the liabilities of Prehired, LLC.

### COUNT II: BREACH OF CONTRACT (ISAP-FPA - Against ISAP)

38. Jordan repeats and realleges all preceding paragraphs as if fully set forth herein.

39. The unsigned MSA constitutes a valid and enforceable agreement between the parties, as evidenced by their course of conduct and performance over a two-year period.

40. ISAP has breached the unsigned MSA by:

    a. Attempting to enforce terms not present in the agreement, specifically the mandatory repurchase of non-performing contracts;

    b. Failing to honor the terms of the agreement as performed by the parties.

41. As a result of ISAP's breach, Jordan has suffered damages, including but not limited to reputational harm and financial losses.

## COUNT III: WRONGFUL ASSIGNMENT OF CONTRACT (Against SELF and Bernstein)

42. Jordan repeats and realleges all preceding paragraphs as if fully set forth herein.

43. The SELF-FPA explicitly required written consent from Prehired for any assignment.

44. SELF and Bernstein assigned the SELF-FPA to ISAP without obtaining the required consent from Prehired or Jordan.

45. This unauthorized assignment is null and void under the terms of the SELF-FPA.

46. As a result of this wrongful assignment, Jordan has suffered damages, including being subject to the lawsuit in California for ~2.5 years and potential liability under terms he did not agree to.

## COUNT IV: FRAUDULENT MISREPRESENTATION (Against All Defendants)

47. Jordan repeats and realleges all preceding paragraphs as if fully set forth herein.

48. Defendants made material misrepresentations regarding:

    a. The terms of the operative agreement between the parties;

    b. Jordan's and Prehired's obligations to repurchase non-performing contracts;

    c. The validity of the assignment from SELF to ISAP.

49. These misrepresentations were false when made, as evidenced by the parties' course of conduct and the terms of the Operative FPA.

50. Defendants knew these representations were false when made, or made them recklessly without regard for their truth.

51. Defendants intended for Jordan and Prehired to rely on these misrepresentations in their ongoing business relationship.

52. Jordan and Prehired reasonably relied on these misrepresentations to their detriment, continuing to do business with ISAP under false pretenses.

53. As a result of this reliance, Jordan has suffered damages, including reputational harm, financial losses, and exposure to potential liability.

**COUNT V: NEGLIGENT MISREPRESENTATION (Against All Defendants)**

54. Jordan repeats and realleges all preceding paragraphs as if fully set forth herein.

55. Defendants owed a duty to Jordan and Prehired to provide accurate information about material aspects of their business relationship, especially given Bernstein's position as owner of both SELF and ISAP.

56. Defendants failed to exercise reasonable care or competence in obtaining or communicating information about:

    a. The terms of the operative agreement;
    b. The validity and effect of assigning the SELF-FPA to ISAP;
    c. The obligations of Jordan and Prehired under the agreement.

57. Jordan and Prehired justifiably relied on these negligent misrepresentations in continuing their business relationship with ISAP and in their understanding of their contractual obligations.

58. As a result of this reliance, Jordan has suffered pecuniary loss, including but not limited to:

    a. Business losses from continued operations under misrepresented terms;
    b. Legal expenses incurred in the California lawsuit, totaling over $250,000 in fees; and
    c. Additional business, job, and career losses caused by the time and resources diverted to defending against the Defendants in California for 2.5 years, instead of focusing on his business and professional growth, further compounding his damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Joshua K. Jordan respectfully requests that this Court:

a. Declare that Jordan and Prehired have no obligation to repurchase non-performing contracts under the operative agreement;

b. Declare that the purported assignment from SELF to ISAP was invalid and unenforceable against Jordan;

c. Declare that Jordan is not personally liable for any repurchase obligations or other liabilities of PreHired, LLC, as no evidence exists to pierce the corporate veil and hold Jordan personally responsible for the obligations of a distinct legal entity;

d. Award compensatory damages for ISAP's breach of the unsigned MSA;

e. Award damages for Defendants' fraudulent and negligent misrepresentations;

f. Award punitive damages as appropriate under applicable law;

g. Grant injunctive relief prohibiting Defendants from continuing their unlawful conduct;

h. Award pre-judgment and post-judgment interest as allowed by law;

i. Award legal costs, expenses, and attorney fees to the extent permitted by law and contract;

j. Grant such other relief as the Court deems just and proper.

Respectfully submitted on October 10, 2024.

> By: /s/ Joshua Jordan
> Joshua Jordan, pro se
> 3223 Twin Church Rd.
> Timmonsville, SC 29161
> joshlegalstuff@gmail.com

COMPLAINT                                   10

## CERTIFICATE OF SERVICE

I hereby certify that on October 10, 2024 a true and correct copy of this document is being served via the CM/ECF federal courts electronic portal to the names and addresses provided by the parties.

By: /s/ Joshua Jordan
Joshua Jordan, Pro Se.